893 P.2d 428

Anthony Theodore GARCIA and Debbie Lucille Garcia, on Behalf of Anthony David GARCIA, their minor and incapacitated son, and on behalf of themselves, Plaintiffs–Appellants,

v.

C. Grant La FARGE, M.D., Defendant–Appellee.

No. 22160.

Supreme Court of New Mexico.

March 2, 1995.

Law Offices of Louis Marjon & Gregory Kauffman, Louis Marjon, Clark Varnell, Albuquerque, for appellants.

Miller, Stratvert, Torgerson & Schlenker, P.A., Ranne B. Miller, Alice Tomlinson Lorenz, Albuquerque, for appellee.

## OPINION

RANSOM, Justice.

On February 24, 1992, Anthony Theodore Garcia and Debbie Lucille Garcia made application to the Medical Review Commission, and on November 17 they sued C. Grant La Farge, M.D., for medical malpractice, negligence, and misrepresentation in the making of a diagnosis of the condition of their minor son, Anthony David Garcia. Dr. La Farge moved for summary judgment under the three-year statute of limitations in the Medical Malpractice Act, NMSA 1978, § 41–5–13 (Repl.Pamp.1989). Dr. La Farge had neither examined nor evaluated Anthony after February 8, 1989, nor had he made any representations concerning Anthony's condition after that date. Anthony's cause of action arose out of a cardiac arrest on November 16, 1991. The Garcias challenged Section 41–5–13 as a violation of due process and equal protection, and as prohibited special legislation. In the alternative, the Garcias urged that the statute of limitations should be tolled because Dr. La Farge had misrepresented his qualifications and had fraudulently concealed Anthony's condition. The district court rejected the Garcias' constitutional claims, found no genuine issue of material fact on the Garcias' claim that the statute of limitations should be tolled, and granted summary judgment in favor of Dr. La Farge.

The Garcias timely filed a notice of appeal in the Court of Appeals, reasserting their constitutional claims and their claim that the statute of limitations should be tolled. The Court of Appeals certified the Garcias' appeal to this Court pursuant to NMSA 1978, Section 34–5–14(C) (Repl.Pamp.1990). Because Section 41–5–13 left an unreasonably short period of time within which the Garcias could file their claims after Anthony's cause of action accrued, we hold under the precedent of *Terry v. New Mexico State Highway Commission*, 98 N.M. 119, 645 P.2d 1375 (1982), that Section 41–5–13 deprived the Garcias of due process.

*Facts.* On December 6, 1988, while running on the playground at his school, nine-year-old Anthony Garcia became dizzy and nearly fainted. Soon thereafter Anthony's parents took him to his pediatrician, Dr. Jacqueline Krohn, who examined Anthony and recommended that he see a cardiologist. Dr. Krohn referred the Garcias to Dr. La Farge who, on December 12, took a history and examined Anthony. Dr. La Farge did not run an electrocardiogram (EKG) that day, but he assured the Garcias that Anthony was fine. He instructed the Garcias to watch for spells of fainting and to report to Dr. Krohn

if they noticed "anything unusual about a pattern of fainting." Dr. La Farge reported his conclusions to Dr. Krohn by letter stating that he "did not schedule ... [an] ECG or echo, since he did not think it warranted at this point" and that he "could not in all honesty think other than that [Anthony] has an innocent pulmonic ejection murmur."

On January 24, 1989, Anthony fainted again—this time while running during a physical education class. The Garcias took Anthony back to Dr. Krohn who had an EKG run and made an appointment for Anthony to see Dr. La Farge. Dr. La Farge examined Anthony on February 8 and conducted a treadmill exercise test. After viewing the results of this test, Dr. La Farge determined that Anthony was "borderline" but informed the Garcias that Anthony was fine and that there was no need for him to limit his activities in any way. Dr. La Farge informed Dr. Krohn by letter that he believed "we have eliminated enough of the important negatives for us to be able to relax for a while and simply observe the passing scene." Regarding Anthony's continued episodes of fainting, Dr. La Farge concluded that "I continue to have to ascribe this to some form of vasovagal syncope, quite likely related to some element of hyperventilation." February 8, 1989, was the last occasion on which Dr. La Farge examined Anthony and the last occasion on which Dr. La Farge made any representations regarding Anthony's health to Anthony, his family, or his physicians.

After February 8, Anthony experienced two more fainting spells, the first on September 29, 1989, and the second on September 27, 1990. Relying on Dr. La Farge's conclusion that Anthony did not have a heart condition, Dr. Krohn sought a neurological explanation for Anthony's fainting spells. After having an electroencephalogram (EEG) run on Anthony, she referred him to Dr. Ruth Atkinson, an Albuquerque neurologist. Relying on the results of the EEG, which showed Anthony's neurological condition to be normal, and relying on Dr. La Farge's conclusions about Anthony's heart, Dr. Atkinson informed the Garcias that Anthony was fine and that they should no longer worry.

On November 16, 1991, while swimming with his father at a hotel in Albuquerque, Anthony again fainted, but this time he went into cardiac arrest. Rescue personnel resuscitated him approximately twenty minutes later. By the time Anthony was resuscitated, however, he had suffered irreversible brain damage.

Anthony was taken to the University of New Mexico Medical Center where he was examined by pediatric cardiologists, Drs. Stuart Rowe and William Berman, Jr. These doctors had an EKG run on Anthony and immediately diagnosed Long QT syndrome. We are advised that Long QT syndrome is an elongation of the Q–T interval, which measures the duration of the electrical activity of the ventricles, the lower chambers of the heart. The syndrome is sometimes characterized by exercise-induced fainting and may produce a heart arrhythmia that in turn often leads to cardiac arrest and resulting brain damage. The syndrome is treatable with oral medication. Left untreated, it results in death or cardiac arrest and brain damage in nearly seventy-five percent of afflicted persons. The Garcias contend that evidence of Long QT syndrome can be found on every page of the EKG tracing reviewed by Dr. La Farge on February 8, 1989.

*Proceedings.* On February 24, 1992, the Garcias filed an application with the Medical Review Commission. *See* NMSA 1978, § 41–5–15(A) (Repl.Pamp.1989) (requiring application to Medical Review Commission before medical malpractice action may be filed). They complained that acts of malpractice were committed by Dr. La Farge in December 1988 and February 1989. On November 17, 1992, the Garcias filed a complaint in district court alleging that Dr. La Farge, together with Drs. Krohn and Atkinson, failed to possess and apply the knowledge and to use the skill and care ordinarily used by well-qualified specialists. The Garcias also claimed that each of these doctors negligently failed to rule in or rule out Long QT syndrome as the cause of Anthony's fainting, negligently failed to consult with one another, and failed to prevent Anthony's cardiac arrest and resulting brain damage. Finally, the Garcias claimed that Dr. La Farge mate-

rially misrepresented his qualifications as a pediatric cardiologist and negligently represented as his diagnosis of Anthony's condition that he was just a "fainter".

On March 9, 1993, Dr. La Farge filed his motion for summary judgment. The Garcias responded by filing a motion to declare the New Mexico Medical Malpractice Act unconstitutional, together with an accompanying memorandum. The Garcias specifically claimed that because Section 41–5–13 bars a plaintiff's claims three years after the underlying act of malpractice regardless of his or her inability to discover the malpractice until an injury manifests itself, it deprives persons such as the Garcias of equal protection and due process. The Garcias also claimed that Section 41–5–13 confers a benefit in the form of an abbreviated limitations period on a select group ("qualified health care providers") for the purpose of securing to that group lower insurance rates at the expense of malpractice victims. The Garcias argued that conferring such a benefit violates Article IV, Section 24 of the New Mexico Constitution, which prohibits the legislature from enacting a "special law" when a general law may be enacted and from enacting special laws pertaining to the limitation of actions.

The district court heard argument and orally granted Dr. La Farge's motion for summary judgment. Thereafter, Dr. La Farge prepared for presentment an order reflecting the court's decision that Section 41–5–13 was not a violation of the Equal Protection or Due Process Clauses, nor of the prohibition against special legislation, and that there was no issue of material fact regarding the Garcias' fraudulent concealment claims. The Garcias indicated that they intended to move for reconsideration of the district court's decision, and at the hearing for presentment of the order the district court again heard argument on the summary judgment issues.

At the presentment hearing the district court determined that its initial decision was correct and entered an order concluding that there was no genuine issue of fact as to whether the statute of limitations had run and whether there was fraudulent concealment. Further, relying on *Armijo v. Tandysh*, 98 N.M. 181, 183–84, 646 P.2d 1245, 1247–48 (Ct.App.1981) (holding that the limitations period provided in Section 41–5–13 is not an equal protection or due process violation), *cert. quashed*, 98 N.M. 336, 648 P.2d 794 (1982), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 377, 74 L.Ed.2d 510 (1982), and *Kern ex rel. Kern v. St. Joseph Hospital, Inc.*, 102 N.M. 452, 455, 697 P.2d 135, 138 (1985) (same), the court concluded that the Garcias' constitutional claims must be rejected.

*Fraudulent concealment not dispositive.* The Garcias argue that if application of the Section 41–5–13 limitations period is otherwise constitutionally valid—and, consequently, the three-year period for filing Anthony's medical malpractice claim expired February 8, 1992—then the limitations period for Anthony's claims should be tolled under the doctrine of fraudulent concealment. Specifically, the Garcias argue that Dr. La Farge materially misrepresented his medical qualifications as well as Anthony's medical condition and thus should be prevented from asserting any limitations defense.

 Under principles of equitable estoppel, this Court recognizes the doctrine of fraudulent concealment to toll a statute of limitations. *Kern*, 102 N.M. at 455–56, 697 P.2d at 138–39. To toll the statute applicable here, the plaintiff must establish that the physician knew of his or her alleged wrongful act and concealed that act from the patient, or that the physician had material information pertinent to the discovery of his or her wrongful act and failed, under a duty to do so, to disclose that information. Because equity tolls the statute, it does so only as long as the patient is not guilty of failing to exercise ordinary diligence in pursuit of a cause of action.[1] As discussed later in this

---

**1.** In *Kern*, the diligence requirement was stated to be "that the patient did not know, or could not have known through the exercise of reasonable diligence, of his cause of action *within the statutory period*." 102 N.M. at 456, 697 P.2d at 139 (emphasis added). *Kern* relied on *Garcia v. Pres-* *byterian Hospital Center*, 92 N.M. 652, 593 P.2d 487 (Ct.App.1979), for the proposition that the statute of limitations is not tolled if the patient knew of the cause of action within the statutory period. 102 N.M. at 456, 697 P.2d at 139. In *Garcia*, however, the patient did learn of the

opinion, regardless of the nondisclosures, Anthony's cause of action is acknowledged to have accrued eighty-five days short of the running of the limitations period and due process requires that he have a reasonable time within which to bring suit. Consequently, we deem the concealment issue to be moot.

■■■ *Section 41–5–13 is a statute of limitations or a statute of repose depending upon its application.* The purpose of a statute of limitations is to protect prospective defendants from the burden of defending against stale claims while providing an adequate period of time for a person of ordinary diligence to pursue lawful claims. *Roberts v. Southwest Community Health Servs.*, 114 N.M. 248, 256, 837 P.2d 442, 450 (1992). By contrast, the purpose of a statute of repose is to put an end to prospective liability for wrongful acts that, after the passage of a period of time, have yet to give rise to a justiciable claim. Statutes of repose begin to run from a statutorily determined time defined without regard to when the underlying cause of action accrues and without regard to the discovery of injury or damages. *See Saiz v. Belen Sch. Dist.*, 113 N.M. 387, 401 n. 12, 827 P.2d 102, 116 n. 12 (1992). Statutes of limitation begin to run when an action accrues or is discovered. *See id.* Because the triggering event under Section 41–5–13 is the act of malpractice, and because the statute began to run long before Anthony's cause of action accrued, we will analyze Section 41–5–13 as a statute of repose.

■■ *Equal protection rights of medical malpractice plaintiffs.* The Garcias challenge Section 41–5–13 as a violation of the equal protection guarantee of the New Mexico Constitution. N.M. Const. art. II, § 18. Specifically, the Garcias claim that by requiring plaintiffs to file medical malpractice claims within three years of the act of malpractice regardless of the time at which the plaintiff discovers his or her injury, Section 41–5–13 infringes Anthony's important interest in access to the courts. Further, the Garcias claim that the statute of repose conferred upon qualified health care providers does not bear a substantial relationship to the legislature's professed goal of alleviating the insurance crisis. *See Roberts*, 114 N.M. at 252, 257, 837 P.2d at 446, 451 (holding that the limitations period contained within Medical Malpractice Act is a "benefit" of the Act available only to qualified health care providers and holding that a cause of action for medical malpractice against a nonqualified health care provider is governed by the discovery rule). We conclude that Section 41–5–13 does not implicate the equal protection rights of medical malpractice plaintiffs.

■■ *–Discriminatory classifications.* The basic guarantee of the Equal Protection Clause of the New Mexico Constitution is that the legislature may not enact a statute which treats similarly situated persons differently. *See Gruschus v. Bureau of Revenue*, 74 N.M. 775, 778, 399 P.2d 105, 107 (1965) (stating that to satisfy mandates of equal protection, legislative classifications must be "so framed as to embrace equally all who may be in like circumstances and situations"). In order to raise a claim that a statute has violated this basic guarantee, the plaintiff must show that the statute draws classifications that discriminate against a group of persons to which the plaintiff belongs. *State v. Hines*, 78 N.M. 471, 473, 432 P.2d 827, 829 (1967) ("The denial of equal rights can be urged only by those who can show they belong to the class discriminated against.") The plaintiff may carry this burden by showing that the challenged statute draws classifications on its face, in its application, or in its purpose and effect. *See 3 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure* § 18.4, at 41–42 (2d ed. 1992)

---

nondisclosure *within* the statutory period and the court tolled the limitations period until that discovery and allowed the plaintiff three years from that time to file suit. In *Kern* the patient did not discover the concealment until after the statutory period had expired, and thus the phrase "within the statutory period" was not dispositive. Here, the Garcias arguably learned of Dr. La Farge's

nondisclosures at the time of Anthony's cardiac arrest and hence within the statutory period. Neither party adequately briefed nor argued whether *Kern* limits the doctrine of fraudulent concealment to cases in which the alleged concealment is not discovered until the applicable limitations period has expired.

("Establishing and Testing Classifications of a Law").

–*Equal protection challenge to Section 41-5-13.* The Garcias cannot demonstrate that Section 41–5–13 draws a classification which discriminates against them in the exercise of their claimed interest in access to the courts. An examination of this statute of repose reveals that it does not discriminate against Anthony Garcia based on his status as a medical malpractice plaintiff. The statute merely provides a statute of repose within which all claimants must file *against* a health care provider. This statute thus classifies claims not according to the status or character of the plaintiff but according to the status or character of the *defendant.* While such a classification may be challenged on equal protection grounds by other tortfeasors or by nonqualified health care providers, it does not implicate the equal protection rights of medical malpractice plaintiffs.

As a statute of repose, Section 41–5–13 defines only the time within which a substantive right may accrue and be asserted in court. Each medical malpractice plaintiff who brings a claim after this statute of repose has run is treated the same. *Cf. Trujillo v. City of Albuquerque,* 110 N.M. 621, 630, 798 P.2d 571, 580 (1990) (finding that tort damages cap discriminated against only certain victims of a given tortfeasor depending upon the amount of damages suffered). While a procedural limitation on the right of access to the courts does implicate constitutional due process considerations, it does not implicate equal protection considerations because Section 41–5–13 operates uniformly upon all similarly situated plaintiffs. Hence the trial court properly rejected the Garcias' equal protection challenge.

■ *Section 41–5–13 does not violate the prohibition against "special legislation."* Article IV, Section 24 of the New Mexico Constitution prohibits the enactment of a "special law" when a "general law can be made applicable." Article IV, Section 24 also specifically prohibits the enactment of special laws pertaining to the limitation of actions. The Garcias contend that Section 41–5–13 is prohibited special legislation because it creates a class of health care providers and

confers a benefit upon that class—a shorter period of exposure to claims—not conferred upon tortfeasors generally. Further, the Garcias claim that because this Court has interpreted Section 41–5–13 as a benefit of the Medical Malpractice Act available only to "qualified" health care providers, *see Roberts,* 114 N.M. at 254, 837 P.2d at 448, Section 41–5–13 confers a benefit upon less than the entire class of health care providers in violation of the prohibition against special legislation.

■ –*Standard of review.* Like the Equal Protection and Privileges and Immunities Clauses of the New Mexico Constitution, the prohibition against special legislation limits the power of the legislature to draw classifications such as the Garcias allege were drawn here. But also like those clauses, the prohibition against special legislation does not forbid all legislative classifications. *See, e.g., State v. Atchison, T. & S.F. Ry.,* 20 N.M. 562, 568, 151 P. 305, 307 (1915) (noting that the legislature may draw classifications and that the presence of such classifications does not automatically make a statute prohibited special legislation). The legislature properly may determine that particular circumstances require the enactment of a statute which applies to a specific class only. *See Scarbrough v. Wooten,* 23 N.M. 616, 620–21, 170 P. 743, 744 (1918) (holding that legislature had discretion to determine whether enactment of a special law balancing competing agricultural and grazing interests in certain areas of the state was necessary).

■ While a statute may be special in the sense that it is not universally applicable, we will not find that such a statute violates the constitutional prohibition simply because the legislature has chosen to confer a benefit upon or allocate a burden to less than all inhabitants of the state. As long as the statute applies to all persons whose particular circumstances, now or in the future, coincide with the particular circumstances that prompted the enactment of the statute, the statute retains its general character, and we will uphold the legislative classification.

■ Legislative classifications cannot be arbitrary, however, and must be based upon

real differences between those to whom the statute applies and those to whom it does not. *Atchison, T. & S.F. Ry.*, 20 N.M. at 568–69, 151 P. at 307. To determine whether the legislature has acted arbitrarily, we need inquire only whether there are some circumstances peculiar to the persons benefitted or burdened that make it reasonable to distinguish those persons from the persons not so benefitted or burdened. *Compare Thompson v. McKinley County*, 112 N.M. 425, 429, 816 P.2d 494, 498 (1991) (upholding a statute that authorized local elections in McKinley County to determine whether alcoholic beverages should be sold from drive-up windows because special circumstances in McKinley County required special remedial measures) *with Keiderling v. Sanchez*, 91 N.M. 198, 200, 572 P.2d 545, 547 (1977) (striking down as special legislation a statute that gave litigants in the second judicial district the right to disqualify three judges while giving all other litigants in the state the right to disqualify only one judge).

■■■■ We accord great weight to legislative classifications and will presume the constitutionality of a statute. *Board of Trustees v. Montano*, 82 N.M. 340, 343, 481 P.2d 702, 705 (1971). Only if we are satisfied that the "statutory classification is so devoid of reason to support it, as to amount to mere caprice" will we declare a statute unconstitutional. *Id.; see also Thompson*, 112 N.M. at 427, 816 P.2d at 496. As the party challenging the constitutionality of Section 41–5–13, the Garcias had the burden of producing evidence demonstrating the absence of a rational basis for the legislative decision to classify health care providers differently from other tortfeasors for limitation of action purposes. *Cf. Thompson*, 112 N.M. at 430, 816 P.2d at 499 (stating that party making equal protection challenge bears burden of demonstrating that statute is arbitrary and capricious); *State ex rel. Gonzales v. Manzagol*, 87 N.M. 230, 234, 531 P.2d 1203, 1207 (1975) (stating that burden is on party challenging statute to show that similarly situated persons are treated differently).

–*Application to the Garcias' claims.* The asserted purpose of the Medical Malpractice Act "is to promote the health and welfare of the people of New Mexico by making available professional liability insurance for health care providers in New Mexico." Section 41–5–2. It is within the competence of the legislature to determine that the high costs of malpractice insurance distinguish the class of health care providers from the class of tortfeasors generally. The high cost of insurance justifies the legislative conclusion that a shorter limitations period for medical malpractice claims was and is necessary to make malpractice insurance more affordable and thereby encourage more physicians to carry such insurance. *See id.*

Similarly, the legislature reasonably could determine that providing the benefit of a shorter period of exposure to malpractice claims only to qualified health care providers was and is necessary to encourage all health care providers to "qualify" under the Medical Malpractice Act. Section 41–5–13 may be viewed as a reasonable benefit accorded to those health care providers who accept the concomitant burden of obtaining occurrence-based malpractice insurance, Section 41–5–5(A)(1) (requiring health care providers to prove coverage by a one hundred thousand dollar per occurrence policy in order to qualify for benefits of Medical Malpractice Act), and of ensuring the solvency of the Patient's Compensation Fund, Section 41–5–25 (levying an annual surcharge on health care providers to maintain a fund to compensate plaintiffs with judgments or settlements in excess of one hundred thousand dollars). The Garcias have adduced no facts that would demonstrate unreasonableness in the legislature's determinations. Thus we conclude that Section 41–5–13 does not violate the prohibition against special legislation.

*Section 41–5–13 violates the due process rights of those persons whose causes of action accrue shortly before this three-year statute of limitations runs.* The Garcias argue that Section 41–5–13 violates substantive due process. Dr. La Farge, while maintaining that the Section 41–5–13 limitations period is constitutional, counters that the Garcias' substantive due process claim was not preserved for review. We believe that the Garcias preserved their due process argument, and we conclude that Section 41–5–

13 left an unconstitutionally short period of time within which the Garcias could file suit after Anthony's cause of action accrued. Hence we reverse the entry of summary judgment.

■ *–The Garcias' substantive due process claim was preserved.* To preserve an issue for appeal, "it must appear that a ruling or decision by the district court was fairly invoked." SCRA 1986, 12–216(A) (Repl. Pamp.1992); *see also* SCRA 1986, 1–046 (Repl.Pamp.1992) (preserving questions for judicial review). One purpose of the preservation rule is to alert the trial judge to a claim of error and give the judge an opportunity to correct any mistake. *Madrid v. Roybal,* 112 N.M. 354, 356, 815 P.2d 650, 652 (Ct.App.), *cert. denied,* 112 N.M. 308, 815 P.2d 161 (1991); *see also Cockrell v. Cockrell,* 117 N.M. 321, 323–24, 871 P.2d 977, 979–80 (1994) (holding that challenge to sufficiency of evidence was not brought to the attention of trial court and thus was not preserved). A second purpose of the preservation rule is to give the opposing party a fair opportunity to meet the case presented by the objector and show why the court should rule against the objector and in the opposing party's favor. *See Fullen v. Fullen,* 21 N.M. 212, 226, 153 P. 294, 298 (1915).

In their memorandum accompanying a motion to declare the Medical Malpractice Act unconstitutional, the Garcias stated that "[s]ubstantive due process and equal protection are complimentary concepts: 'In both substantive due process and equal protection cases, the judiciary is called upon to review the substance of a law and whether the law is constitutionally permissible'" (quoting John E. Nowak & Ronald D. Rotunda, *Constitutional Law* § 11.4, at 369 (4th ed. 1991)). The Garcias went on to argue that Section 41–5–13 deprived them of access to the courts in violation of due process. As part of their argument, the Garcias provided the court and opposing counsel with citation to decisions from other courts striking down medical malpractice statutes of limitation on due process grounds. Finally, counsel for Dr. La Farge devoted extensive time at the summary judgment hearings arguing that Section 41–5–13 was consistent with due pro-

cess. Although plaintiffs' due process arguments were not a model of clarity, and certainly could have been made with more specificity, they were sufficient to alert the trial court and opposing counsel to the substance of the argument being made. As such, we conclude that the due process challenge to Section 41–5–13 was preserved.

In a motion for rehearing filed after this opinion was first entered, Dr. La Farge points out that at oral argument counsel for the Garcias conceded he had not raised, briefed, or argued the due process issue in reliance on *Terry v. New Mexico State Highway Commission,* 98 N.M. 119, 645 P.2d 1375 (1982), the case that we find dispositive in the next part of this opinion. Counsel for the Garcias acknowledged that "we became aware of [*Terry v. Highway Commission* ] when the *Coleman* decision came down." *See Coleman v. United Engineers and Constructors, Inc.,* 118 N.M. 47, 878 P.2d 996 (1994) (noting in footnote 2 that in *Terry v. Highway Commission* we held that "fundamental considerations of due process require that the ten-year limitation [of Section 37–1–27] not be applied to actions accruing within but close to the end of the ten-year period"). We issued the *Coleman* decision after all the briefs had been filed in this case. Dr. La Farge argues that

> Plaintiffs' attorney ... missed the dispositive constitutional challenge. He failed to make it on a number of occasions when he could have done so, and even at the time of oral argument did not appear to be able to distinguish the "due process as applied" argument from other types of constitutional challenges. This is no different from a doctor who has missed a diagnosis, as Dr. La Farge is alleged to have done.

Dr. La Farge thus argues that Plaintiffs should be denied their day in court because their counsel failed to rely on a dispositive case when arguing constitutional substantive due process law in opposition to a motion for summary dismissal of the complaint.

■ The alleged medical error, however, went unaddressed until *after* Anthony suffered irreversible harm. At worst, the harm from any failure on the part of Plaintiffs' attorney is that the trial court ruled on a

threshold substantive due process question without benefit of argument on a dispositive case. The rules that govern the preservation of error for appellate review are not an end in themselves, rather they are instruments for doing justice. *Cf. State v. Alingog,* 117 N.M. 756, 760, 877 P.2d 562, 566 (1994) (observing that "[o]ur rules requiring the preservation of questions for review are designed to do justice, and it is only when the merits of applying those rules clearly are outweighed by other principles of substantial justice that we will apply the doctrine of fundamental error"). Here, we need not apply the doctrine of fundamental error; we find that justice is served by a not-too-stringent analysis of the substantive due process objection that in fact was interposed to Dr. La Farge's request for summary dismissal.

■ *–Due process requires a limitations statute to provide a reasonable period within which an accrued right may be exercised.* The United States Supreme Court has long held that the legislature may, consistent with due process, impose a statutory time deadline for commencing an accrued action where no limit existed before, *see, e.g., Hawkins v. Joshua Barney's Lessee,* 30 U.S. 294, 300 (5 Pet.) (1831), and may, consistent with due process, shorten the time period within which existing claims may be brought as long as a reasonable time is provided for commencing suit, *see e.g., Terry v. Anderson,* 95 U.S. 628, 632–33, 24 L.Ed. 365 (1877). As the Court explained in *Wilson v. Iseminger,* 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902):

> It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action. . . .

This Court has long recognized these principles as affecting the power of the legisla-ture to enact statutes of limitations. *See, e.g., Davis v. Savage,* 50 N.M. 30, 42–43, 168 P.2d 851, 859 (1946) ("It is now settled that the Legislature may prescribe a limitation for the bringing of suits *where none previously existed,* and may shorten the time within which suits to enforce existing causes of action may be commenced, if a reasonable time, under the circumstances, be given by the new law for commencing suit before the bar takes effect." (quoting Horace G. Wood, *A Treatise on the Limitation of Actions at Law and in Equity* § 12b, at 76 (4th ed. 1916))). However, rather than treating these principles as a limitation only on legislative power to apply retroactively a new limitations period to existing rights, we have adopted these principles as a general limitation on legislative power to enact any limitations period. *Terry v. New Mexico State Highway Comm'n,* 98 N.M. 119, 122–23, 645 P.2d 1375, 1378–79 (1982).

Thus in *Terry v. Highway Commission* this Court refused enforcement of a statute of repose requiring that actions for bodily injury arising from the defective or unsafe condition of a physical improvement to real property be brought within ten years from the date of substantial completion of such improvement. The Court held that, as applied to a plaintiff whose cause of action accrued approximately three months before the ten-year limitations period was set to expire, the statute of repose violated due process because it left an unreasonably short period of time within which to bring a cause of action. *Id.* at 123, 645 P.2d at 1379.

■ We reaffirm the principle that considerations of fairness implicit in the Due Process Clauses of the United States and New Mexico Constitutions dictate that when the legislature enacts a limitations period it must allow a reasonable time within which existing or accruing causes of action may be brought. It is no less arbitrary. when an existing statute of repose is applied to bar a claim accruing near the end of the limitations period than when a newly enacted limitations period is applied to a cause of action existing at the time of the enactment. We thus hold that a statute of repose that allows an unreasonably short period of time within which to

**542**

bring an accrued cause of action violates the Due Process Clause of the New Mexico Constitution.

In light of this holding, we conclude that as applied to Anthony Garcia's malpractice claims, Section 41–5–13 violates due process. When Anthony Garcia suffered cardiac arrest on November 16, 1991, there were eighty-five days remaining before the limitations period was scheduled to expire on his malpractice claims against Dr. La Farge. While it is generally a matter for the legislature to establish limitations periods, this Court may determine that the limitations period selected is unreasonably short. *Terry v. Highway Comm'n*, 98 N.M. at 123, 645 P.2d at 1379. Because the legislature has not otherwise specified a reasonable period of time within which to bring claims such as Anthony's that accrue near the end of the period provided in Section 41–5–13, we will apply the three-year accrual-based limitation of NMSA 1978, Section 37–1–8 (Repl. Pamp.1990), the statute of limitations which would be applicable to Anthony's claims if Section 41–5–13 had not been enacted. *See id.*

*Conclusion.* Because, as applied to his medical malpractice claims, Section 41–5–13 left an unreasonably short period of time within which Anthony could exercise his accrued rights, we find that allowing the statute to bar Anthony's claims would violate the Due Process Clause of the New Mexico Constitution. Anthony's suit having been brought within three years of the date on which his medical malpractice claims accrued, it should be deemed timely. Hence we reverse the summary judgment entered in favor of Dr. La Farge and remand for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

BACA, C.J., and FRANCHINI, J., concur.