**Certiorari Granted, October 12, 2011, No. 33,166**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-112**

**Filing Date: May 9, 2011**

**Docket No. 30,343**

**CHRISTUS ST. VINCENT REGIONAL
MEDICAL CENTER,**

 **Third-Party Plaintiff-Appellee,**

**v.**

**RAMON DUARTE-AFARA, M.D., and
MARK WADE DICKINSON, M.D.,**

 **Third-Party Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Barbara J. Vigil, District Judge**

Hinkle, Hensley, Shanor & Martin, L.L.P.
William P. Slattery
David B. Lawrenz
Santa Fe, NM

for Appellee

Allen, Shepherd, Lewis, Syra & Chapman, P.A.
E.W. Shepherd
J. Adam Tate
Albuquerque, NM

for Appellant Duarte-Afara, M.D.

Butt, Thornton & Baehr, P.C.
W. Ann Maggiore
Emily A. Franke
Albuquerque, NM

1

for Appellant Dickinson, M.D.

**OPINION**

**CASTILLO, Chief Judge.**

**{1}**   The primary issue before us is whether the claim of Christus St. Vincent Regional Medical Center (Medical Center) for equitable indemnification is a malpractice claim governed by the Medical Malpractice Act (MMA), NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2008), and subject to the three-year statute of repose provided by Section 41-5-13 of the MMA.  We hold that Medical Center's claim is governed by the MMA and subject to Section 41-5-13.  We also consider whether due process and equal protection concerns preclude application of Section 41-5-13 and conclude that they do not.  Accordingly, we reverse.

**BACKGROUND**

**{2}**   On December 6, 2004, Lillian Martinez (Martinez) received a hysterectomy at Medical Center.  Several days later, on December 9 and 10, she developed respiratory problems and ultimately suffered brain damage.  On December 4, 2007, almost three years later, Martinez filed a complaint against Medical Center under the MMA alleging medical malpractice. Specifically, Martinez alleged that Medical Center failed to adequately monitor her after surgery, administered inappropriate and/or excessive medications, failed to timely and properly diagnose and treat her respiratory problems, and failed to timely diagnose and treat her while she was experiencing a significant life-threatening medical emergency.

**{3}**   Martinez filed an application for panel review with the New Mexico Medical Review Commission on March 6, 2008, asking the commission to, in part, review the conduct of Dr. Duarte-Afara and Dr. Dickinson (Doctors), the physicians who treated her at Medical Center and Appellants in this case.  On March 12, 2008, Martinez amended her December 4, 2004 complaint against Medical Center to include Doctors.

**{4}**   In response to Martinez's amended complaint, Doctors filed motions for summary judgment in June 2008 asserting that Martinez's claims against them were barred by the three-year time period set forth in Section 41-5-13 of the MMA. *Id.* (stating that "[n]o claim for malpractice arising out of an act of malpractice . . . may be brought against a health care provider unless filed within three years after the date that the act of malpractice occurred"). The district court agreed with Doctors and dismissed Martinez's claims against Doctors with prejudice.

**{5}**   On December 22, 2008, Medical Center filed a third-party complaint for indemnification against Dr. Duarte-Afara in which Medical Center sought indemnification in the amount, if any, for which it may be found vicariously liable for Dr. Duarte-Afara's malpractice.  On March 19, 2009, Medical Center amended its third-party complaint to

2

include an indemnification claim against Dr. Dickinson.

**{6}** In response to Medical Center's amended third-party complaint, Doctors filed a motion to dismiss, arguing that Medical Center's indemnification claim was also barred by Section 41-5-13. Medical Center countered that Section 41-5-13 is not controlling, claimed that the four-year statute of limitations provided in NMSA 1978, Section 37-1-4 (1929) governed their amended third-party complaint, and asserted that its indemnification claim could proceed. The district court agreed with Doctors and granted their motion to dismiss.

**{7}** In March 2010, the district court granted Medical Center's motion to reconsider the court's dismissal of its claims against the Doctors. The court determined that "[b]ecause this matter is a claim for indemnification rather than malpractice . . . Section 41-5-13 . . . is inapplicable[,]" and further determined that "[t]he statutory time limit for the third-party claims for indemnification in this matter does not begin to run until the claim of indemnity accrues, which is at the time of payment of the underlying claim, judgment, or settlement, and not from the time that the underlying damage occurred to [Martinez]." We accepted Doctors' request for interlocutory review on the issue of the applicability of the MMA and Section 41-5-13 to Medical Center's indemnification claim against Doctors.

**DISCUSSION**

**{8}** On appeal, Doctors argue, as they did below, that Medical Center's indemnification claim is governed by the MMA and subject to Section 41-5-13. Because, as explained below, we agree with this argument, we also address Medical Center's contention that application of Section 41-5-13 would deprive them of their due process and equal protections rights.

**Applicability of the MMA and Section 41-5-13**

**{9}** To address Medical Center's indemnification claim, we must construe Section 41-5-13 as it applies to the facts of this case. We review such matters de novo. *Bd. of Comm'rs of Rio Arriba Cnty. v. Greacen*, 2000-NMSC-016, ¶ 4, 129 N.M. 177, 3 P.3d 672 ("This is primarily a matter of statutory construction and thereby concerns a pure question of law, subject to de novo review."); *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 7, 129 N.M. 698, 12 P.3d 960 ("We review de novo the [district] court's application of the law to the facts in arriving at its legal conclusions."). "This Court's primary goal when interpreting statutes is to further legislative intent." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 15, 149 N.M. 162, 245 P.3d 1214. To determine legislative intent, "we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 (1996). We begin by examining the history and purpose behind the MMA and Section 41-5-13.

**{10}** The MMA was enacted in response to a perceived malpractice insurance crisis in New Mexico. *Roberts v. Sw. Cmty. Health Servs.*, 114 N.M. 248, 251-52, 837 P.2d 442, 445-46 (1992). Through the MMA, the Legislature made professional liability insurance available to health care providers but conditioned availability to that insurance on a quid pro

3

quo: health care providers could receive the benefits of the MMA only if they became qualified health care providers under the MMA and accepted the burdens of doing so. *Id.*; *see also Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶¶ 27-29, 121 N.M. 821, 918 P.2d 1321 (discussing the benefits and burdens of participation in the MMA).

**{11}** Section 41-5-13 is one benefit health care providers receive in accepting the burdens of the MMA. *See Cummings*, 1996-NMSC-035, ¶ 29 (describing the Legislature's decision to enact Section 41-5-13 as one of the "[t]he most notable" benefits under the MMA); *Roberts*, 114 N.M. at 252-53, 837 P.2d at 446-47 (identifying Section 41-5-13 as one of the benefits inuring to qualified health care providers under the MMA). This provision provides the following:

> No claim for malpractice arising out of an act of malpractice which occurred subsequent to the effective date of the [MMA] may be brought against a health care provider unless filed within three years after the date that the act of malpractice occurred except that a minor under the full age of six years shall have until his ninth birthday in which to file. This section applies to all persons regardless of minority or other legal disability.

Section 41-5-13 (alteration omitted).

**{12}** Section 41-5-13 addressed one of the reasons insurance carriers were withdrawing from medical malpractice: the potential for malpractice liability coverage suits being filed long after the act of malpractice. *Cummings*, 1996-NMSC-035, ¶ 40. Our Supreme Court has previously concluded that the plain language of Section 41-5-13 demonstrates that the Legislature intended the "occurrence rule" to govern claims controlled by the MMA. *Cummings*, 1996-NMSC-035, ¶¶ 47-48. The occurrence rule fixes the accrual date in which a patient must file a claim for medical malpractice at the time of the act or occurrence of medical malpractice even if the patient is oblivious of any harm. *See id.* ¶ 47. As such, Section 41-5-13 will function, under certain circumstances, as a statute of repose. See *Cummings*, 1996-NMSC-035, ¶¶ 48-50 (describing the circumstances under which Section 41-5-13 may function either as a statute of limitations or as a statute of repose and explaining that "a statute of repose terminates the right to any action after a specific time has elapsed, even though no injury has yet manifested itself"). Having established the general principles that guide our analysis, we turn now to the more specific question of whether Medical Center's indemnification claim is governed by the MMA and thus subject to Section 41-5-13.

**{13}** The MMA comprehensively defines what constitutes a "malpractice claim." *See* § 41-5-3(C).

> "[M]alpractice claim" includes any cause of action arising in this state against a health care provider for medical treatment, lack of medical treatment or other claimed departure from accepted standards of health care which proximately results in injury to the patient, whether the patient's claim or cause of action sounds in tort or contract, and includes but is not limited

to actions based on battery or wrongful death; "malpractice claim" does not include a cause of action arising out of the driving, flying or nonmedical acts involved in the operation, use or maintenance of a vehicular or aircraft ambulance[.]

*Id.* Our Supreme Court has observed that the breadth of this language indicates that "[t]he [L]egislature foresaw and intended broad application of the concept of a 'malpractice claim.'" *Wilschinsky v. Medina*, 108 N.M. 511, 517, 775 P.2d 713, 719 (1989). The question we must answer is whether an equitable indemnification claim falls within the ambit of this broadly defined concept. To answer that question we must examine the nature of a claim for indemnification.

**{14}** New Mexico recognizes "both traditional and proportional equitable indemnification." *N.M. Pub. Schs. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 23, 145 N.M. 316, 198 P.3d 342. "Traditional indemnification grants the person who has been held liable for another's wrongdoing an all-or-nothing right of recovery from a third party, such as the primary wrongdoer." *Id.* "[P]roportional indemnification allows a defendant to seek partial recovery from another for his or her fault." *Id.* Medical Center has not specified which of these two theories of indemnification it has invoked. Nevertheless, our Supreme Court has explained that, under either theory, "to state a claim for equitable indemnification, the indemnitor must be at least partly liable to the original plaintiff for his or her injuries." *Id.* ¶ 28 (emphasis omitted). In other words, "[a] properly pled indemnity claim must allege that the defendant [or indemnitor] caused some *direct harm* to a third party and that the plaintiff or [indemnitee] discharged the resulting liability from this harm." *Id.* ¶ 30. This doctrinal point is, in our view, determinative.

**{15}** As discussed above, the Legislature intended that the term "malpractice claim" be construed broadly. *Wilschinsky*, 108 N.M. at 517, 775 P.2d at 719. Indeed, a claim may be construed as a malpractice claim within the meaning of the MMA if "the gravamen of the third-party action is predicated upon the allegation of professional negligence by a practicing physician." *Id.* at 517-18, 775 P.2d at 719-20 (internal quotation marks and citation omitted). We discern from *Gallagher* that the gravamen of Medical Center's equitable indemnification claim is predicated upon the allegation that Doctors negligently caused, and were partly liable for, Martinez's injuries. As such, we hold that Medical Center's equitable indemnification claim is a malpractice claim as that term is used in the MMA and is, therefore, subject to Section 41-5-13.

**{16}** We reach this conclusion, in part, so as to carry out the policy goals the Legislature intended by enacting the MMA and Section 41-5-13. *See C. de Baca v. Baca*, 73 N.M. 387, 392, 388 P.2d 392, 396 (1964) ("It accordingly devolves upon us to interpret the statute so as to accomplish the ends sought by the [L]egislature."). In effect, Medical Center's equitable indemnification claim exposes Doctors to the identical liability to which they were subject under Martinez's claims. Martinez's claims were properly dismissed as untimely. To permit Medical Center's claim to proceed where Martinez's claim could not, would, in our view, elevate form over substance and frustrate the underlying concerns which motivated our Legislature to enact the MMA and Section 41-5-13—that is, relieving insurers and health

5

care providers from the uncertainty posed by stale malpractice claims. *Cummings*, 1996-NMSC-035, ¶ 40.

**{17}** We are unpersuaded by Medical Center's varying arguments that its indemnification claim is not governed by the MMA. Citing *Budget Rent-A-Car Systems, Inc. v. Bridgestone Firestone N. Am. Tire, LLC*, 2009-NMCA-013, ¶ 21, 145 N.M. 623, 203 P.3d 154, Medical Center first argues that the limitation period for an indemnification claim begins to run "at the time of payment of the underlying claim, payment of a judgment, or payment of a settlement." Medical Center further contends that "a third-party plaintiff's cause of action for indemnification or contribution is distinct from the tort claim asserted by the plaintiff against the defendant in the underlying suit." Medical Center cites a variety of out-of- state authority for this proposition, *see State ex rel. General Electric Co. v. Gaertner*, 666 S.W.2d 764, 766 (Mo. 1984) (en banc); *State Farm Mut. Auto. Ins. Co. v. Schara*, 201 N.W.2d 758, 759 (Wis. 1972); *Duncan v. Beres*, 166 N.W.2d 678, 687 (Mich. Ct. App. 1968), which we have duly considered.

**{18}** These cases all point to the well-settled proposition that a cause of action for indemnification is separate and distinct from the underlying tort. *See* Maurice T. Brunner, *When Statute of Limitations Commences to Run Against Claim for Contribution or Indemnity Based on Tort*, 57 A.L.R.3d 867, § 4[a] (1974) ("The cause of action for indemnity of one whose liability for a tort is secondary or constructive, against one whose liability for the tort is primary, is separate and distinct from the injured person's cause of action for the tort, and is generally recognized not to be a mere species of subrogation to the tort cause of action. It is inchoate until judgment is rendered or the claim is settled." (footnotes omitted)). We do not dispute this point of law. However, this point does not undermine our confidence in the conclusion that Medical Center's indemnification claim does fall within the ambit of the term "malpractice claim" as that term is used in the MMA. As discussed above, the controlling inquiry in determining whether a claim constitutes a "malpractice claim" under the MMA is merely whether the gravamen of the claim is predicated upon the allegation of professional negligence. We have concluded that this is the case. As such, Medical Center's claim is governed by the MMA and is subject to Section 41-5-13.

**{19}** Medical Center devotes considerable attention to two Missouri cases, *Rowland v. Skaggs Companies, Inc.*, 666 S.W.2d 770 (Mo. 1984) (en banc), and *Aherron v. St. John's Mercy Medical Center*, 713 S.W.2d 498 (Mo. 1986) (en banc), and argues that the reasoning and conclusions in these cases should apply here. In these cases, the Missouri Supreme Court addressed whether the two-year statute of limitations governing medical malpractice claims in Missouri applied to claims for contribution or indemnification. *Rowland*, 666 S.W.2d at 772; *Aherron*, 713 S.W.2d at 499-500. In *Rowland*, the court observed that the language of the statute of limitations at issue revealed "an unequivocal legislative intent to make only a specified class of suits brought against health care providers subject to" the two-year statute of limitations, and concluded that their legislature did not include suits for contribution in that limited class. 666 S.W.2d at 772. *Aherron* relied almost exclusively on *Rowland* to reach the same conclusion as to claims for indemnification. *Aherron*, 713 S.W.2d at 499-500. We distinguish these cases from New Mexico law based on policy considerations. Our Legislature intended to define the term "malpractice claim" in the

6

MMA broadly. *Wilschinsky*, 108 N.M. at 517, 775 P.2d at 719. Thus, New Mexico law is based on the converse of the policy concerns articulated and acted upon in *Rowland* and *Aherron*.

**{20}** In conclusion, we hold that Medical Center's claim for equitable indemnification is governed by the MMA and subject to Section 41-5-13. Because Medical Center's claim was filed outside the three-year limitations period, Section 41-5-13, if applied, would bar Medical Center's amended third-party complaint. We proceed to address Medical Center's argument that application of Section 41-5-13 is impermissible as its application would violate Medical Center's due process and equal protection rights.

**Due Process and Equal Protection**

**{21}** Medical Center asserts that, given the timing of Martinez's claim, it had only six days to file its equitable indemnification claim in order to comply with Section 41-5-13 and that this is an unreasonably short period of time. Citing due process and equal protection concerns, Medical Center argues that application of Section 41-5-13 is impermissible. We review constitutional arguments de novo. *Gomez v. Chavarria*, 2009-NMCA-035, ¶ 6, 146 N.M. 46, 206 P.3d 157, *cert. quashed*, 2009-NMCERT-012, 147 N.M. 601, 227 P.3d 91. We begin with due process.

**{22}** "[T]he [L]egislature may, consistent with due process, impose a statutory time deadline for commencing an accrued action where no limit existed before, and may, consistent with due process, shorten the time period within which existing claims may be brought as long as a reasonable time is provided for commencing suit." *Garcia ex rel. Garcia v. La Farge*, 119 N.M. 532, 541, 893 P.2d 428, 437 (1995) (citations omitted). Thus, "considerations of fairness implicit in the Due Process Clauses of the United States and New Mexico Constitutions dictate that when the [L]egislature enacts a limitations period it must allow a reasonable time within which existing or accruing causes of action may be brought." *Id.* Our Supreme Court has applied these principles in the context of the MMA and has, on three separate occasions, specifically inquired whether application of Section 41-5-13 would violate due process. We review those cases below.

**{23}** In *La Farge*, a young boy suffered a fainting spell and was treated by a heart specialist. 119 N.M. at 534-35, 893 P.2d at 430-31. The specialist misdiagnosed the boy's symptoms, but this was not discovered until a subsequent fainting episode. *Id.* at 535, 893 P.2d at 431. The subsequent episode occurred only eighty-five days before the expiration of the limitations period in Section 41-5-13. *La Farge*, 119 N.M. at 542, 893 P.2d at 438. The boy filed a malpractice claim approximately seven months after the Section 41-5-13 date had run. *La Farge*, 119 N.M. at 535, 893 P.2d at 431. Although filed outside the allowable window, our Supreme Court concluded that the boy's due process rights would be violated if Section 41-5-13 was applied to preclude his claim. *La Farge*, 119 N.M. at 542, 893 P.2d at 438. The Court focused on the fact that the boy learned of the malpractice only eighty-five days before the Section 41-5-13 expiration date. *La Farge*, 119 N.M. at 542, 893 P.2d at 438. Eighty-five days, the Court determined, was an unreasonably short period of time within which the boy could exercise his rights. *Id.* Accordingly, the Court concluded that

7

Section 41-5-13 was inapplicable and instead applied the accrual based statute of limitations in NMSA 1978, Section 37-1-8 (1976). *La Farge*, 119 N.M. at 542, 893 P.2d at 438. As the boy had filed suit within three years of the date of accrual—the date the boy discovered the malpractice—his claim could proceed. *Id.*

**{24}** In *Cummings*, 1996-NMSC-035, ¶¶ 2, 6, a patient received x-rays, and the medical provider identified certain abnormalities, but then failed to properly diagnose those abnormalities. The patient later discovered that the abnormalities were cancerous masses. *Id.* The date of malpractice was identified as August 1988 and the date the patient discovered the malpractice as February 1990, roughly one and one-half years before the Section 41-5-13 limitation period expired in August 1991. *Cummings*, 1996-NMSC-035, ¶ 57. The patient filed her malpractice claim in July 1992, approximately eleven months after the Section 41-5-13 expiration date. *Cummings*, 1996-NMSC-035, ¶ 57. Our Supreme Court declined to extend the conclusion in *La Farge* to the patient's case and determined that her claim was barred by Section 41-5-13. *Cummings*, 1996-NMSC-035, ¶¶ 57-58. The Court reasoned that the patient knew of the malpractice a year and a half before the Section 41-5-13 expiration date, but failed to file her claim. *Cummings*, 1996-NMSC-035, ¶¶ 57-58. Accordingly, the patient could not complain that her due process rights were violated by the preclusive effect of Section 41-5-13. *Cummings*, 1996-NMSC-035, ¶¶ 57-58. She had more than adequate time to take action, but failed to do so. *Id.*

**{25}** Finally, in *Tomlinson v. George*, 2005-NMSC-020, ¶ 4, 138 N.M. 34, 116 P.3d 105, a patient had wrist surgery in August 1996 that was ineffective and, when the patient saw another specialist only a few months later, was informed that the initial surgeon had been negligent. The patient filed a claim for malpractice in March 2000, roughly seven months after the Section 41-5-13 limitations period expired. *Tomlinson*, 2005-NMSC-020, ¶¶ 5, 10. Again, our Supreme Court declined to apply the result reached in *La Farge*. *Tomlinson*, 2005-NMSC-020, ¶¶ 23-24. The Court observed that the patient learned of the malpractice only a few months after it occurred, but failed to act on this information for most of the Section 41-5-13 period. *Tomlinson*, 2005-NMSC-020, ¶¶ 23-24. As in *Cummings*, the Court concluded that the patient's due process rights were not violated by the preclusive effect of Section 41-5-13. *Tomlinson*, 2005-NMSC-020, ¶¶ 23-24.

**{26}** Because we have concluded that Medical Center's equitable indemnification claim is a "malpractice claim" under the MMA and subject to Section 41-5-13, we apply the due process analysis developed in the cases above. We do so despite the fact that the issue in those cases was the due process rights of patients/plaintiffs whereas here we are concerned with the rights of a third-party. Conceptually, these seem like different matters and would, perhaps, implicate a different analysis. The parties do not address that issue.

**{27}** *La Farge*, *Cummings*, and *Tomlinson* make clear that the due process analysis in the Section 41-5-13 context requires us to identify three dates: (1) the occurrence date, i.e., the date the malpractice occurred; (2) the discovery date, i.e., the date the existence of the malpractice is discovered; and (3) the Section 41-5-13 expiration date. Here, the occurrence date and the Section 41-5-13 expiration date are clear and there is no dispute between the parties as to these dates. The malpractice at issue in this case—Martinez's

8

injuries—occurred on December 9-10, 2004, and thus the three-year limitations period expired on December 10, 2007.

**{28}** The parties disagree about the date of discovery. Medical Center claims that the discovery date is December 4, 2007, the date Martinez filed her complaint against Doctors, which was six days before the Section 41-5-13 expiration date. Doctors counter that the discovery date is either December 9 or 10, 2004, the date the malpractice committed against Martinez occurred, or December 11, 2007, the date Martinez's complaint was served on counsel for Medical Center. As explained below, we agree with Doctors that the date of discovery is December 11, 2007, the date Medical Center received service or, alternatively, at some point thereafter.

**{29}** "The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action. The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." *Coslett v. Third St. Grocery*, 117 N.M. 727, 735, 876 P.2d 656, 664 (Ct. App. 1994) (internal quotation marks and citation omitted). Medical Center concedes that it did not have knowledge that Martinez had suffered an injury until the date her complaint was filed—December 4, 2007. We accept this statement as an admission on Medical Center's part that it did not have knowledge that Martinez suffered injuries prior to Martinez's decision to file suit. We do not, however, accept the legal conclusion implicit in Medical Center's concession, i.e., that Medical Center knew Martinez filed suit merely because Martinez filed a complaint in district court. Medical Center could only discover that Martinez had filed a claim upon receiving service of process. Medical Center received service on December 11, 2007, one day after the three-year limitation period provided by Section 41-5-13 expired. Accordingly, we conclude that the earliest possible discovery date is December 11, 2007. We observe that Medical Center did not file its indemnification claim against Doctors until December 2008. This suggests that the discovery date could be well after December 11, 2007. We need not, however, conclusively decide the issue.

**{30}** As described above, Section 41-5-13 is a statute of repose and terminates the right to any action after a specific time has elapsed. *Cummings*, 1996-NMSC-035, ¶ 50. Our Supreme Court has clearly stated that the due process analysis first established in *La Farge*, and further developed in *Cummings* and *Tomlinson*, applies "only to claims discovered within the statutory period; if a claim is discovered after the statute has run, Section 41-5-13 is an explicit bar." *Tomlinson*, 2005-NMSC-020, ¶ 23. The discovery date in the present matter was one day beyond the end of the three-year limitations period provided by Section 41-5-13. As such, we hold that Section 41-5-13 bars Medical Center's claim and further conclude that the preclusive effect of Section 41-5-13 does no harm to Medical Center's due process rights. We conclude this opinion by briefly addressing Medical Center's equal protection arguments.

**{31}** At the end of Medical Center's discussion of the due process issue, Medical Center contends that its equal protection rights would also be violated if we conclude that Section 41-5-13 applies. This claim appears to be premised on two points. First, Medical Center contends that, if its claim for indemnification is dismissed as untimely, it will be solely

responsible for the Martinez liabilities.  Medical Center then argues that "the New Mexico [L]egislature did not include third[-]party claims, including indemnity claims, in the [MMA's] definition of 'malpractice claim.'"  It is not clear to us how this implicates equal protection and it is well settled that we do not review unclear arguments.  *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.  Moreover, this claim seems merely a variation of Medical Center's contention that indemnification claims are not governed by the MMA or subject to Section 41-5-13.  We rejected this claim above.

## CONCLUSION

{32}    The district court's determination that Medical Center's amended third-party complaint and the claim for indemnification therein was not governed by the MMA and not subject to Section 41-5-13 is reversed.  We reach the opposite conclusion and reject Medical Center's contention that doing so violates its due process and equal protection rights.  We remand this matter to the district court with instructions to dismiss Medical Center's amended third-party complaint and for proceedings not inconsistent with this opinion.

{33}    **IT IS SO ORDERED.**

 

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

**MICHAEL D. BUSTAMANTE, Judge**

**MICHAEL E. VIGIL, Judge**

Topic Index for *Christus St. Vincent v. Duarte-Afar*, No. 30,343

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-MD | Motion to Dismiss |
| CP-SL | Statute of Limitations |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| CT-EP | Equal Protection |
| | |
| **IN** | **INSURANCE** |
| IN-IY | Indemnity |

**ST**              **STATUTES**
ST-LI               Legislative Intent

**TR**              **TORTS**
TR-MM               Medical Malpractice
TR-SA               Statute of Limitations