The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>March 10, 2025</u>

**No. A-1-CA-41672**

**DENNIS P. MURPHY, as Guardian ad Litem for DILON BARBERO, a minor,**

Plaintiff-Appellant,

v.

**PEDIATRIX CARDIOLOGY OF NEW MEXICO, P.C. d/b/a PEDIATRIX CARDIOLOGY ASSOCIATES OF NEW MEXICO,**

Defendant-Appellant,

and

**PRESBYTERIAN HEALTHCARE SERVICES,**

Defendant,

and

**NEW MEXICO SUPERINTENDENT OF INSURANCE,**

Intervenor-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Kathleen McGarry Ellenwood, District Court Judge**

Durham, Pittard & Spalding, LLP
Caren I. Friedman
Justin R. Kaufman
Rosalind B. Bienvenu
Philip M. Kovnat
Santa Fe, NM

Buckingham & Vega Law Firm
Adrian O. Vega
Albuquerque, NM

Serpe Andrews, PLLC
John S. Serpe
Megan N. Anson
Houston, TX

for Appellant

Integrion Group, Inc.
Barry J. Berenberg
Albuquerque, NM

for Appellee

**OPINION**

**HANISEE, Judge.**

{1}     This case arises from an occurrence of medical malpractice. Plaintiff Dennis Murphy, as guardian ad litem for Dilon Barbero, entered into a settlement with Defendant Pediatrix Cardiology of New Mexico, P.C.—a qualified health care provider under the Medical Malpractice Act (the MMA), NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2023). The Superintendent of Insurance[1] (the Superintendent), however, declined to disburse the agreed amount from the Patient's Compensation Fund because, in their view, the payment for lump sum future medical expenses—a term of the settlement—violated the MMA. The district court revoked its approval of the minor's settlement agreement between Plaintiff and Defendant based on the Superintendent's objections. Plaintiff appeals, arguing that a payment of lump sum future medical expenses is not precluded by the MMA and that the Superintendent does not have authority to object to a court-approved settlement or refuse to pay it. We affirm, though for differing reasons as stated in both this opinion

---

[1]John Franchini served as the Superintendent of Insurance at the start of the district court proceedings. Franchini's tenure as Superintendent ended on December 31, 2019. Russell Toal was thereafter named as Franchini's successor, effective January 1, 2020. Alice Kane was then appointed as Toal's successor on June 10, 2023. We hereinafter refer to the Superintendent using "they/their" pronouns given the number of different individuals who served as Superintendent throughout the proceedings in this case.

and the separate authorship.[2] Given the differing perspectives of this panel related to the statutory provisions at issue regarding lump sum payments for future medical expenses, we encourage the Legislature to revisit these provisions and to provide clarity to this important question that will continue to arise under the MMA.

**BACKGROUND**

{2}     Plaintiff filed suit on behalf of Barbero, a minor, against various medical groups and hospitals including Defendant pursuant to the MMA. The week before trial—after the remaining parties had already settled with Plaintiff—Plaintiff and Defendant appeared before the district court for an emergency status conference, wherein they requested the trial be vacated so they could finalize a settlement. The district court vacated the trial. Soon after, the parties requested a hearing so the district court could approve the minor's settlement. The hearing was held wherein Plaintiff as guardian ad litem recommended approval of the settlement and the district court spoke as well with Barbero's parents. The district court entered an order approving the settlement.

{3}     Pursuant to Section 41-5-25(G) (1997), the parties prepared a release that reflected a certified copy of the court-approved settlement. Upon being presented

---

[2]We acknowledge that this opinion has a complex precedential value. Based on the dissent, the section regarding the plain language of Section 41-5-7(D) (1992) prohibiting lump sum future medical payments is not binding precedent, but the remaining portions of Section II, along with Section III, are authoritative.

with the release, the Superintendent refused to pay the settlement as approved by the district court because it included a payment for lump sum future medical expenses, which the Superintendent viewed as a violation of Section 41-5-7(D) (1992). The Superintendent filed a stipulated motion to intervene in the case and a few days later Plaintiff filed a motion to enforce the settlement, which Defendant joined. After the district court held a hearing on the motion to intervene, it permitted intervention and ordered a response and reply for Plaintiff's motion to enforce.

{4}     After briefing from the parties and a hearing on the motion to enforce the settlement, the district court denied Plaintiff's motion and ordered the settlement agreement previously approved by the court be vacated. The district court made the following relevant findings. First, that the Superintendent, as custodian of the Patient's Compensation Fund, ordinarily participates in negotiations and approves settlement agreements that involve the fund so they can protect and administer funds and receive protections afforded by the MMA. Further, the Superintendent was originally involved in negotiations during this case, but negotiations broke down because the Superintendent would not agree to a term that allowed a lump sum for future medical expenses, rather than payment of expenses as they were incurred, as required by the MMA.

{5}     The district court refused to conclude whether the Superintendent should participate in negotiations and approve settlements, but determined that because the

Superintendent "was not included in on the negotiations of the lump sum award for future medical expenses, [the Superintendent was] unable to determine if they are reasonable, excessive[,] or inadequate." It also concluded that it was "not within [the district c]ourt's authority to order the Superintendent to violate a provision of the MMA. It is the responsibility of the [Superintendent] to issue the payment within the confines of their statutory authority." The district court noted that Plaintiff and Defendant resolved the case amongst themselves, "even though they knew that the lump sum payment of future medical costs was specifically not approved by the [Superintendent]" and that they led the district court "to believe the [Superintendent] had approved the settlement when they brought this settlement to the [c]ourt." Therefore, the district court withdrew approval of the settlement and gave the parties sixty days to reach an agreement or the court would put the case on its trial docket.

{6}     Plaintiff filed a motion to reconsider or in the alterative for interlocutory appeal. After briefing and a hearing, the district court denied the motion to reconsider but granted Plaintiff's request for interlocutory appeal. This Court granted the application.

**DISCUSSION**

**I.      Standard of Review**

{7}     To resolve Plaintiff's claims, we must engage in statutory interpretation, which we conduct de novo. *See Wood v. N.M. Educ. Ret. Bd.*, 2011-NMCA-020,

4

¶ 12, 149 N.M. 455, 250 P.3d 881. Generally, "[i]n construing the language of a statute, our goal and guiding principle is to give effect to the intent of the Legislature." *Lujan Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545. "In determining legislative intent, [appellate courts] look to the plain language of the statute and the context in which it was enacted, taking into account its history and background." *Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 14, 492 P.3d 586. Moreover, "[w]e consider all parts of the statute together, reading the statute in its entirety and construing each part in connection with every other part to produce a harmonious whole." *Dep't of Game & Fish v. Rawlings*, 2019-NMCA-018, ¶ 6, 436 P.3d 741 (alterations, internal quotation marks, and citation omitted).

## II.    Lump Sum Payments for Future Medical Expenses Violate the MMA

{8}    Plaintiff first argues that Section 41-5-7(D) (1992) permits parties to reach settlements that include lump sum payments for future medical expenses when the amount is limited by time and degree consistent with the MMA. The Superintendent responds that the plain language of the statute prohibits the practice. I agree with the Superintendent.

{9}    I start with an overview of the MMA. In a general sense, the MMA was enacted "to promote the health and welfare of the people of New Mexico by making available professional liability insurance for health care providers in New Mexico."

*Baker v. Hedstrom*, 2013-NMSC-043, ¶ 16, 309 P.3d 1047 (internal quotation marks and citation omitted). To bring about the goals of the MMA, "the Legislature created a balanced scheme to encourage health care providers to opt into the [MMA] by conferring certain benefits to them, which it then balanced with the benefits it provided to their patients." *Id.* ¶ 17. "[T]he Legislature made professional liability insurance available to health care providers but conditioned availability to that insurance on a quid pro quo: health care providers could receive the benefits of the MMA only if they became qualified health care providers under the MMA and accepted the burdens of doing so." *Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 2011-NMCA-112, ¶ 10, 267 P.3d 70. To be "qualified," health care providers must establish certain financial responsibilities with the Superintendent, which include paying a surcharge into the Patient's Compensation Fund and either filing proof of liability coverage with the Superintendent or submitting a deposit to the Superintendent to cover a maximum of three separate occurrences of malpractice. Section 41-5-5(A) (1992).

{10} In exchange, the MMA limits the health care provider's liability to $200,000, and any judgments in excess of that amount are paid out of the Patient's Compensation Fund. Section 41-5-6(D) (1992); § 41-5-25(G) (1997). Qualified providers are provided several benefits. *See, e.g.*, § 41-5-6(A), (B) (1992) (instituting a $600,000 cap on damages excluding punitive damages and medical care costs in

6

excess of that amount); § 41-5-14(D) (1976) (requiring that plaintiffs submit malpractice claims to the medical review commission for permission to sue the provider in district court); § 41-5-4 (demanding that complaints submitted to district court cannot specify a requested dollar amount for damages only that "such damages as are reasonable"). These provisions "benefit qualified health care providers by acting as a bar to claims initiated by patients who fail to comply with the [MMA]'s provisions." *Baker*, 2013-NMSC-043, ¶ 18.

{11}     Some of the terms of this balanced scheme, as outlined in Section 41-5-7 (1992), are conditions on payments for future medical expenses. Section 41-5-7(D) (1992)—the crux of the issue on appeal in my view—specifically states, "Payment for medical care and related benefits shall be made *as expenses are incurred.*" (Emphasis added.) This language, in my view, plainly and simply prohibits payment of future medical expenses in an advance lump sum. *See Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153 ("The plain meaning rule of statutory construction states that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (internal quotation marks and citation omitted)).[3] Though this Court

---

[3]I observe as well that while Sections 41-5-7(A) and (B) (1992) specifically address judgments, *see* § 41-5-7(A) (1992) (addressing "the jury" and "actions upon malpractice claims tried in the district court, where liability is found); § 41-5-7(B) (1992) (addressing "once a judgment is entered"), no such limiting language appears within Section 41-5-7(D) (1992), which I construe as applicable to both judgments

is not bound by its statement, *see State v. Mares*, 2024-NMSC-002, ¶ 52, 543 P.3d 1198 (noting this Court can "reach any issue over which [our Supreme Court] precedent is not directly controlling"), our Supreme Court has alluded to agreeing with this construction. *See Baker*, 2013-NMSC-043, ¶ 18 (noting that the MMA prohibits monetary awards for future medical expenses and that they must be paid out as they accrue rather than in advance).

{12}     Plaintiff argues that we must give effect to Section 41-5-7(F) (1992) and "indicates that the provision that requires future medicals to be paid as incurred does not prevent a patient and a [qualified health care provider] from entering into a settlement agreement that includes a lump sum payment for future medical expenses if they are limited by time and degree." *See Quantum Corp. v. N.M. Tax'n & Revenue Dep't*, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848 (noting that the statutes whose construction is in question are to "be read in connection with other statutes concerning the same subject matter"). Section 41-5-7(F) (1992), however, states, "This section shall not be construed to prevent a patient and a health care provider from entering into a settlement agreement whereby medical care and related benefits shall be provided for a limited period of time only or to a limited degree." Prohibiting

---

and settlements under the MMA. *See Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2013-NMSC-013, ¶ 36, 484 P.3d 954 ("[W]hen the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional." (internal quotation marks and citation omitted)).

8

lump sum payments for future medical expenses does not impact the ability to settle for benefits for a limited period of time or degree; rather, prohibiting lump sum payments prevents a certain form of the payment—a lump sum as opposed to making payments as they are incurred. Far from meaningless as Plaintiff suggests, Section 41-5-7(F) (1992) permits parties to settle despite the provisions of Section 41-5-7(B) (1992), which require payments to continue "as long as medical or surgical attention is reasonably necessary" and for "all medical care and related benefits directly or indirectly made necessary by the health care provider's malpractice." Section 41-5-7(F) (1992) allows for settlement "for a limited period of time only or to a limited degree"—despite Section 41-5-7(B) (1992)'s mandate. Thus, Section 41-5-7(D) (1992) and Section 41-5-7(F) (1992) can be read in harmony even if lump sum future medical payments are prohibited.

{13}   For his next argument, Plaintiff claims that lump sum payments were permitted under Section 41-5-7 (1992) based on the Superintendent's unsuccessful recommendation to the Legislature that the current amendment of Section 41-5-7, which does not contain the "as incurred" language, be replaced with a provision that reinserts the "as incurred" language and affirmatively states that the Superintendent will not settle future medical expenses as a future lump sum payment. However, the Superintendent's endorsement of an amendment that was not passed by the Legislature—one that includes effectively the same restriction as the relevant

9

statute—does not affect the analysis of the statute before us. *See State v. Vest*, 2021-NMSC-020, ¶ 34, 488 P.3d 626 ("[W]e do not analyze the language of bills that died in committee and never became law or bills that were vetoed by the [g]overnor.").

{14} Plaintiff further argues that the current amendment of Section 41-5-7(D) leaving the language within Section 41-5-7(F) (1992) undisturbed—stating, "This section shall not be construed to prevent a patient and a health care provider from entering into a settlement agreement whereby medical care and related benefits shall be provided for a limited period of time only or to a limited degree"—demonstrates that the language about paying medical expenses as incurred "had detrimental effect[s]." *Compare* § 41-5-7(D), *with* § 41-5-7(F) (1992). These detrimental effects, he argues, are a reason to not construe the prior version of the statute, the one at issue here, to prohibit lump sum payments. But it is the Legislature that has the authority to amend the MMA as it sees fit and their policy changes—in this case the maintenance of Section 41-5-7(F) (1992) in a future amendment—cannot overcome the effect of the plain language of the statute. *See Leger v. Gerety*, 2019-NMCA-033, ¶ 37, 444 P.3d 1036 (noting that "when the Legislature enacts a new statute we presume that it intended to change the law as it previously existed" (emphasis, internal quotation marks, and citation omitted)), *rev'd on other grounds by* 2022-NMSC-007, ¶¶ 4, 15, 503 P.3d 349.

{15}    Plaintiff lastly makes several policy arguments that do not have any bearing on statutory construction. These assertions include: the Superintendent has a longstanding practice of making lump sum payments in this context; the Superintendent argued in the alternative to the district court that they could make this determination on a case-by-case basis; an incurred payment increases costs to the Patient's Compensation Fund; the fund does not receive the benefit of the discounted value of the plaintiff's cost of life plan; future medical expenses in general are a small percentage of the fund's costs compared to past medical expenses and nonmedical damages; paying out medical expenses as incurred will lead to disputes; and there are no guarantees related to the fund's future solvency. Again, these policy considerations are within the purview of the Legislature and it is not for this Court to read absent language into a statute to change it or disregard the Legislature's intent. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (noting appellate courts "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written" (internal quotation marks and citation omitted)); *State v. Maestas*, 2007-NMSC-001, ¶ 14, 140 N.M. 836, 149 P.3d 933 ("Our role is to construe statutes as written and we should not second guess the [L]egislature's policy decisions."); *Torres v. State*, 1995-NMSC-025, ¶ 10, 119 N.M. 609, 894 P.2d 386 ("[I]t is the particular domain of the [L]egislature, as the voice of the people, to

11

make public policy."). As such, I believe it to be clear that Section 41-5-7(D) (1992) of the MMA disallows payment of future medical expenses in a lump sum.

**III.    The Superintendent Had the Authority to Object to the Terms in the Settlement Based on the MMA**

{16}    Plaintiff next argues that the Superintendent lacks authority to object to or refuse to pay a court-approved settlement made pursuant to the MMA. This argument requires us to engage in statutory interpretation.

{17}    As the panel of this Court is in agreement as to this section of this opinion, we start by agreeing with the district court that the MMA does not contain explicit language requiring the Superintendent to evaluate and approve proposed settlements when the Patient's Compensation Fund is involved, nor does it prohibit the Superintendent's involvement. What it does state is that the Superintendent is required to hold available monies in trust and protect the Patient's Compensation Fund. *See* § 41-5-25(A) (1997) (noting the Patient's Compensation Fund is "collected and received by the [S]uperintendent for exclusive use for the purposes stated in the [MMA]").

{18}    Further, we agree with the district court that whether the propriety of the Superintendent's participation in settlement negotiations need not be decided. Here, the Superintendent participated in such negotiations, during which they made clear they would neither agree to nor pay a lump sum for future medical expenses. Afterward, the settlement was reached without the Superintendent's input. Plaintiff

12

did not object to the Superintendent's initial participation at the time, nor to the Superintendent's later motion to intervene in the underlying case. Rather, upon the Superintendent's joinder in the proceedings, Plaintiff filed a motion seeking the district court to compel the Superintendent to approve the settlement. Thus, authority to participate in settlement notwithstanding, the Superintendent was properly a party before the district court. At issue, therefore, is whether the Superintendent's objection as manifested by its refusal to pay the settlement is legal under these circumstances. We unanimously agree that it is.

{19} Plaintiff first argues that the plain language of the MMA does not give the Superintendent authority to object to or refuse to pay a court-approved settlement. He starts by noting those provisions that use the word "shall" when describing the Superintendent's role as related to settlements under the MMA. *See* § 41-5-6(D) (1992) ("Any amount due from a judgment or settlement in excess of two hundred thousand dollars ($200,000) *shall* be paid from the [P]atient's [C]ompensation [F]und." (emphasis added)); § 41-5-25(G) (1997) (noting that after the Superintendent receives a certified copy of the court-approved settlement, they "*shall* issue or have issued warrants in accordance with the payment schedule constructed by the court and made a part of its final judgment" (emphasis added)).[4]

---

[4]Plaintiff also cites two factually distinct nonprecedential orders, one from a federal district court and another from a New Mexico district court for this proposition. The cases lack precedential authority so we decline to address them.

13

{20} Plaintiff's list of the Superintendent's functions, however, sets forth rudimentary duties that relate to payments from the Patient's Compensation Fund that the Superintendent must make. Those specific functions, as listed, lack the sort of exclusionary language that would suggest the Superintendent has no other functions or duties that the MMA otherwise prevents the Superintendent from taking action under the statute in manners not enumerated. This is particularly so given Section 41-5-25(A) (1997) lists broader powers of the Superintendent as custodian of the Patient's Compensation Fund. It would be unreasonable to interpret enabling language within Section 41-5-6(G) (1992) (limiting the dollar amount to be paid by the Patient's Compensation Fund) and Section 41-5-25(G) (1997) (outlining the circumstances in which the Superintendent "shall issue" payments), for example, to limit the Superintendent's authority to administer and safeguard the Patient's Compensation Fund and we decline to do so. *See Britton v. Off. of the Att'y Gen.*, 2019-NMCA-002, ¶ 27, 433 P.3d 320 ("When construing individual statutory sections contained within an act, courts examine the overall structure of the act and consider each section's function within the comprehensive legislative scheme. . . . A construction must be given which will not render the statute's application absurd or unreasonable and which will not defeat the object of the Legislature." (internal quotation marks and citations omitted)).

14

{21}     Plaintiff next contends that the doctrine of separation of powers precludes the Superintendent from objecting to court-approved settlements. The main assertion underlying this argument is that the Superintendent overreached its authority when it implemented 13.21.1.8(I) NMAC (noting that the Superintendent has the power to "negotiate reasonable and appropriate compromises and settlements of the [Patient's Compensation F]und's liability"). Again, the Superintendent's ability to negotiate is not at issue, it is whether they had the ability to object to and refuse to comply with a term in a court-approved settlement that is the question. We therefore need not consider whether the regulation, or the governing settlement negotiation, oversteps the Superintendent's statutory authority.

{22}     Plaintiff again points to public policy, which it argues should prevent the Superintendent from objecting to a court-approved settlement. Plaintiff suggests the following considerations support its argument: New Mexico public policy favors settlement; eliminating the risk that providers will be personally liable for excessive punitive damages; the parties' and district court's "requisite knowledge to make an informed decision about whether a settlement is appropriate," whereas the Superintendent "has no legitimate basis upon which to disagree with the parties' evaluation of the case"; the difficulty of settling cases if you add a third-party to negotiations; the Superintendent's previous policy of paying out settlements that included a lump sum payment for future medical expenses and no change in law to

15

precipitate the deviation from past practice; the increased cost of litigation; that other parties determine if the settlement was "reasonable, excessive[,] or inadequate" so the district court need not do so; and that the fiscal woes of the Patient's Compensation Fund should not be taken account in this decision. The MMA, however, authorizes only the Superintendent to expend funds from the Patient's Compensation Fund, and only "for the purposes of and to the extent provided in the [MMA]." Section 41-5-25(A) (1997). Despite Plaintiff's policy arguments, "[u]nless a statute violates the Constitution, we will not question the wisdom, policy, or justness of legislation enacted by our Legislature." *Aeda v. Aeda*, 2013-NMCA-095, ¶ 11, 310 P.3d 646 (alteration, internal quotation marks, and citation omitted).

{23} Finally, Plaintiff argues that two of the district court's findings are not supported by substantial evidence. The first is that "the parties decided to take matters into their own hands and ignore the Superintendent's responsibilities relating to the [Patient's Compensation Fund] and resolve the case amongst themselves." The second is that the parties led the court to believe the Superintendent had approved the settlement. We need not address these claims inasmuch they would not amount to reversible error.

**CONCLUSION**

{24} We affirm the district court.

16

{25}    **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR IN PART:**

_____
**ZACHARY A. IVES, Judge, concurring in Judge Wray's concurrence in part and dissent in part**

_____
**KATHERINE A. WRAY, Judge, concurring in part and dissenting in part**

**WRAY, Judge (concurring in part and dissenting in part).**

{26} I agree with the Court's conclusion that Section 41-5-7(F) (1992) did not permit lump sum payments of future damages and that the Superintendent had authority to object to the settlement terms in the district court. I disagree only that the plain language of Section 41-5-7(D) (1992) precluded lump sum settlement payments.

{27} As this Court's opinion notes, Section 41-5-7(F) (1992) did not speak to lump sum payments—a settlement may be limited in time and scope but still paid "as incurred." Neither did Section 41-5-7(D) (1992) say anything about limiting settlements of any kind. This Court's opinion declines to broadly read Section 41-5-7(F) (1992) to permit lump sum settlements, and in my view, the language of Section 41-5-7(D) (1992) also does not reach so far as to prohibit them. *See Nat'l Union of Hosp. Emps. v. Bd. of Regents*, 2010-NMCA-102, ¶ 23, 149 N.M. 107, 245 P.3d 51 ("Legislative silence is at best a tenuous guide to determining legislative intent." (internal quotation marks and citation omitted)). Further inquiry into the mechanics of the Legislature's entire evolving approach to the payment of future medical expenses is instructive for future parties applying both Section 41-5-7 (1992) as well as its amended counterparts. *See Baker*, 2013-NMSC-043, ¶ 15 (explaining that caution must accompany any analysis of "the provisions of the MMA . . . [because]

18

ambiguity may be lurking in even seemingly plain words if they conflict with overall legislative intent").

{28} Other provisions of the MMA could be read to indicate that the Legislature intended for Section 41-5-7(D) (1992) to fit into a broader vision for the care of patients injured by medical malpractice and did not address lump sum settlements. When read together, Section 41-5-6(C) (1992) (prohibiting damages awards for future medical expenses), Section 41-5-7 (setting forth a procedure to collect future medical expenses when there is no damages award), and Section 41-5-9 (1976) (authorizing continuing jurisdiction for the district court to resolve disputes about the necessity of ongoing medical care), create a picture of a system within which future medical care for patients was not limited to an estimate calculated at the time the dispute was resolved but was handled as needs arose. In that context, Section 41-5-7(D) (1992) suggests a requirement that payment be timely made, as the expenses were incurred, as opposed as to reimbursement after the patient has paid the expenses.

{29} The parties attempt to demonstrate that the recent amendments to the MMA prove their point about the availability of lump sum payments. But the amendments, read in the larger context, could show the Legislature's intent to depart entirely from the previous system. Section 41-5-7(D) (1992) was not banished from the MMA in isolation. Since 2021, Section 41-5-6 no longer prohibits the recovery of future

19

medical expenses as damages, Section 41-5-7 no longer provides a procedure to pay future medical expenses apart from damages awards, and Section 41-5-9 provides for continuing jurisdiction only for claims that arose from occurrences that predate the amendments. The current statute, like the former Section 41-5-7(D) (1992), remains silent about whether lump sum settlement payments of future damages are permitted or prohibited. The plain language of the MMA did not and does not explicitly prohibit parties to a medical malpractice action from agreeing to an alternate resolution, and the Legislature knew—and knows—how to achieve that result if it so intended. No party argues that Section 41-5-7(D) was ambiguous. I am therefore unable to fault Judge Hanisee's plain language reading of the provision. But I also find that I cannot join that analysis and ignore the concern that ambiguities lurk in the seemingly plain language of Section 41-5-7(D). *See Baker*, 2013-NMSC-043, ¶ 15. I reach no conclusion on the meaning of Section 41-5-7(D) (1992) because "[i]t is of no benefit either to the parties or to future litigants . . . to promulgate case law based on . . . speculation rather than the parties' carefully considered arguments." *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53.

{30}    My dissent is also narrow because even if lump sum payments were not prohibited by the plain language of the MMA, the Superintendent has a role to play in the proceedings, and the order before the Court is an exercise of the discretion

20

afforded to the district courts to approve or disapprove settlements. *Cf. In re Norwest Bank of N.M., N.A.*, 2003-NMCA-128, ¶ 22, 134 N.M. 516, 80 P.3d 98. The parties obtained approval of their settlement from the district court and presented to the Superintendent for payment the "certified copy of a court-approved settlement or certification." *See* § 41-5-25(G)(2). The parties expected that, with court approval, the Superintendent would simply pay, because the MMA directs that with court approval, "the [S]uperintendent shall issue or have issued warrants in accordance with the payment schedule constructed by the court and made a part of its final judgment." *See* § 41-5-25(F). The Superintendent, however, is a trustee, with duties not to the Patient's Compensation Fund itself, but to the intended beneficiaries of the funds held in trust—all patients who are entitled to compensation for injuries caused by medical malpractice and qualified health care providers who have purchased the requisite insurance and paid the assessed surcharges. *See* § 41-5-25(A) (1997) (creating the Patient's Compensation Fund "for exclusive use for the purposes stated in the [MMA] and directing that "[t]he fund and any income from it shall be held in trust"); § 41-5-5 (1992) (defining the qualifications for health care providers to receive the benefits of the MMA); *Baker*, 2013-NMSC-043, ¶ 19 (describing a patient's "ability to recover").

{31}   In the present case after intervening without objection from the parties, the Superintendent essentially took the position that the court-approved settlement

21

required the disbursement of funds in a manner that is contrary to the MMA and its purposes. *See* § 41-5-25(A) (1992). If lump sum settlements are neither prohibited nor permitted by the MMA, the dispute for the district court to resolve centers on whether the settlement serves the purposes of the MMA as is required for the Superintendent to expend funds under Section 41-5-25(A). *See* § 41-5-25(F) (1997) (requiring, in the event of a shortfall in the Patient's Compensation Fund, the Superintendent to prorate and prioritize some payments). Always, the MMA analysis returns to its purpose and how to best serve patients and health care providers. The district court revoked approval of the settlement, based in part on a conclusion that lump sum payments violated the MMA, but also based on the district court's view of the parties' representations and disregard for the Superintendent's duties. The record supports the district court's view of events. The district court dictated no settlement terms and did not prohibit the parties from entering into a lump sum settlement. This was an appropriate exercise of the district court's discretion to approve and to revoke approval of the settlement agreement.

**{32}** For these reasons, I concur in all but the plain language analysis of Section 41-5-7(D) within Section II of this Court's opinion.

_____
**KATHERINE A. WRAY, Judge**

**IVES, J., concurs.**

22